1  James T. Walker
   P.O. Box 9301
2  109 Maher Court
   Vallejo, CA 94591
3  Tele: (707) 315-3310

4  Plaintiff,
   JAMES T. WALKER
5  in *pro per*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CIVIL JURISDICTION

| | |
|---|---|
| JAMES T. WALKER, | Case Number: C07-3100 BZ |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO DEFENDANT, MOTION TO DISMISS |
| vs. | |
| C & H SUGAR, et. al., | Date: April 16, 2008<br>Time: 10:00 AM |
| Defendants. | Court Room: G |

**I.**

**FACTS**

On or about May 1, 2002 Plaintiff suffered injury to a malfunction of equipment (backhoe) owned and operated by C & H Sugar. Plaintiff was aboard ship at the time of the incident and acting within the course and scope of his employment as a longshoreman during unloading operations. The injury consisted of Plaintiff being struck in the head by a malfunctioning backhoe with such force that the head injury left him totally disable, and temporarily incompetent.

Plaintiff suffers extraordinary pain daily.

**II.**

**LEGAL ANALYSIS**

**MARITIME SITUS:**

1

1       It is Defendant's position that there is insufficient nexus between his activities about ship and
2  admiralty law; that the Court lacks jurisdiction.

3       Under maritime common law, "[C]ourts have traditionally defined the locus of the tort as the
4  place where the injury occurs." Solano,761 F.2d at 1371. However, situs of a tortious injury depends,
5  *inter alia*, on the type of tort alleged. Where it is clear that tortious injury occurs solely ashore, the
6  federal courts are generally without admiralty jurisdiction. See, e.g., Lamontagne v. Craig,632 F.
7  Supp. 706, 709 (N.D. Ca. 1986)(admiralty jurisdiction does not extend to defamatory libel where,
8  although written at sea, publication and corresponding injury occurred on land), aff'd per curiam,817
9  F.2d 556 (9th Cir. 1987). See also Clinton v. Joshua Hendy Corp., 285 F.2d 199, 201-02 (9th Cir.
10 1960)(admiralty jurisdiction not extended to tortious interference with contractual relations
11 consummated on land) and Clinton v. International Org. of Masters,254 F.2d 370, 372 (9th Cir.
12 1958). But see Admiralty Extension Act, 46 U.S.C. § 740. Conversely, when the alleged tort is
13 committed and injury occurs solely at sea, the federal courts have admiralty jurisdiction. See, e.g.,
14 Nelson v. United States,639 F.2d 469, 472-73 (9th Cir. 1980) (admiralty jurisdiction extends to
15 negligence in performing hazardous maritime work on board a vessel at sea); Rolph Navigation &
16 Coal Co. v. Kohilas,299 F. 52, 55 (9th Cir. 1924) (admiralty jurisdiction extends to assault and battery
17 committed on board a vessel at sea).

18      Defendant has made no argument that Plaintiff was not performing hazardous duty about ship
19 at the time of the incident.  •

20      The 9th Circuit held in Perkins v. Marine Terminals Corp., 673 F.2d 1097 (9th Cir.
21 04/08/1982), a workers compensation case, that "situs" is not jurisdictional for admiralty purposes.
22 The Court went on to say, "an injury may have a sufficient connection with traditional maritime
23 activity (an offshore oil spill) to be well within the reach of admiralty jurisdiction..." The touchstone
24 in determining whether admiralty jurisdiction exists is whether the case "involves a significant
25 relationship to traditional maritime activity." Id. at 1358, discussing Executive Jet Aviation, Inc. v.
26 City of Cleveland,409 U.S. 249, 93 S. Ct. 493, 34 L. Ed. 2d 454 (1972).

27      "It is the existence of the special employer-employee relationship, and not the situs of that

28                                        2

relationship, that is significant for purposes of admiralty jurisdiction." Sea-Land Service, Inc. v. Director, Office of Workers' Compensation Programs, 540 F.2d 629, 636 (3d Cir. 1976). See also Brady-Hamilton Stevedore Co. v. Herron, 568 F.2d 137, 141 (9th Cir. 1978).

In P. C. Pfeiffer Co. v. Ford, 444 U.S. 69, 78, 100 S. Ct. 328, 335, 62 L. Ed. 2d 225 (1979). The Court concluded, that to satisfy the situs requirement, the injury must occur "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." 33 U.S.C. § 903(a).

**MARITIME NEXUS**:

The threshold question, therefore, is to determine whether this action is within the federal courts' admiralty jurisdiction. Historically, admiralty jurisdiction was invoked if a tort occurred on or over navigable waters. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 253, 34 L. Ed. 2d 454, 93 S. Ct. 493 (1972); Owens-Illinois, Inc. v. United States District Court, 698 F.2d 967, 969 (9th Cir. 1983). In Executive Jet, however, the Supreme Court rejected exclusive reliance on locality and held that in addition to having a maritime situs "the wrong must bear a significant relationship to traditional maritime activity." *Executive Jet*, 409 U.S. at 268. Although *Executive Jet* addressed maritime jurisdiction over an aviation tort claim, subsequent decisions have applied the two-part test to torts outside the aviation context. Foremost Insurance Co. v. Richardson, 457 U.S. 668, 674, 73 L. Ed. 2d 300, 102 S. Ct. 2654 (1982); Owens-Illinois, Inc., 698 F.2d at 969-70.

In examining the first part of the maritime tort test, courts have traditionally defined the locus of the tort as the place where the injury occurs. See, e.g., *Executive Jet*, 409 U.S. at 266; Smith v. Pan Air Corp., 684 F.2d 1102, 1111 (5th Cir. 1982); Edynak v. Atlantic Shipping Inc. Cie. Chambon Maclovia S.A. 562 F.2d 215, 221 (3d Cir. 1977), cert. denied, 434 U.S. 1034, 54 L. Ed. 2d 781, 98 S. Ct. 767 (1978); Kelly v. United States, 531 F.2d 1144, 1146 (2d Cir. 1976); Carroll v. Protection Maritime Insurance Co., 512 F.2d 4, 8 (1st Cir. 1975); Oppen v. Aetna Insurance Co., 485 F.2d 252, 256 (9th Cir. 1973). The injury in the present case occurred aboard ship, satisfying the requirement of maritime locality.

3

1   To determine whether the second part of the maritime tort standard is met, i.e., whether the
2 alleged tort has a sufficient nexus to traditional maritime activity, this Circuit considers four factors:
3 (1) traditional concepts of the role of admiralty law; (2) the function and role of the parties; (3) the
4 types of vehicles and instrumentalities involved; and (4) the causation and nature of the injury
5 suffered. Owens-Illinois, Inc., 698 F.2d at 970 (citing T.J. Falgout Boats, Inc. v. United States, 508
6 F.2d 855, 857 (9th Cir. 1974), cert. denied, 421 U.S. 1000, 44 L. Ed. 2d 667, 95 S. Ct. 2398 (1976)).

7   In *Foremost Insurance Co.*, the Supreme Court defined the principle focus of maritime
8 jurisdiction as "the protection of maritime commerce." *Foremost Insurance Co.*, 457 U.S. 668, 674, 73
9 L. Ed. 2d 300, 102 S. Ct. 2654 (1982). The loading of cargo onto a vessel by two longshoremen falls
10 squarely within the ambit of traditional maritime services or activities in furtherance of commerce.
11 The goal of uniformity in the law governing maritime industries and the concern for providing
12 remedies to those confronting the dangers of maritime employment militate toward admiralty
13 jurisdiction in the case. Austin v. Unarco Industries, 705 F.2d 1, 11 (1st Cir.), cert. dismissed, 463
14 U.S. 1247, 104 S. Ct. 34, 77 L. Ed. 2d 1454 (1983); Kelly v. Smith, 485 F.2d 520, 526 (5th Cir.
15 1973), cert. denied, 416 U.S. 969, 40 L. Ed. 2d 558, 94 S. Ct. 1991 (1974).

16   Nor does an appraisal of the other three factors dissuade one of the presence of a significant
17 maritime nexus with plaintiffs' tort claims. The longshoremen's function of loading or unloading a
18 ship's cargo had traditionally been a concern of admiralty law. Atlantic Transport Co. v. Imbrovek,
19 234 U.S. 52, 61-62, 58 L. Ed. 1208, 34 S. Ct. 733 (1914); *Austin*, 705 F.2d at 11; *Edynak*, 562 F.2d at
20 221. Plaintiff was engaged in unloading sugar from a ship *via* a terminal operator. But even if one
21 finds the maritime nexus of the terminal operator too attenuated, the nature of the defendant's
22 activities is not the dispositive criterion. *Oppen*, 485 F.2d at 257.

23   The Supreme Court has adopted an expansive application of the *Executive Jet* requirement
24 that a significant relationship to traditional maritime activity exist. See Foremost Ins. Co. v.
25 Richardson, 457 U.S. 668, 672, 73 L. Ed. 2d 300, 102 S. Ct. 2654 (1982).

26   The vehicle involved -- a backhoe -- is not inherently indigenous to maritime commerce, but
27 viewed as an instrumentality to a vessel loading operation, is no less common to marine commerce

4

than to land operations. The facts in the present case are easily distinguishable from Peytavin v. Government Employees Insurance Co.,453 F.2d 1121 (5th Cir. 1972), in which an action for whiplash injuries allegedly suffered from a rear-end automobile collision on a floating pontoon at a ferry landing was held not to be within admiralty jurisdiction because of the absence of a connection with maritime interests or activities. Id. at 1122, 1126-27. The significant inquiry in the present case is not whether the instrumentality was a backhoe rather than an item peculiar to maritime commerce, but whether the injury was inflicted during the conduct of a maritime service, such as loading cargo.

In determining whether the causation and nature of injury had a sufficient maritime flavor, the courts have focused on the site of consummation of the injury rather than the origin of the negligent act of omission. See, e.g., Smith v. Pan Air. Corp.,684 F.2d at 1111 (place where negligence or wrongful act occurs not decisive; greater significance placed on function being performed by injured person); Sperry Rand Corp. v. Radio Corp. of America,618 F.2d 319 (5th Cir. 1980) (products liability action against manufacturer held cognizable in admiralty notwithstanding that component parts were not manufactured for solely maritime uses); *Edynak*,562 F.2d 215 (longshoreman working aboard vessel struck by defendant's pier-based crane); In re Motorship Pacific Carrier, 489 F.2d 152 (5th Cir.), cert. denied, 417 U.S. 931, 41 L. Ed. 2d 235, 94 S. Ct. 2643 (1974) (smoke from defendant's shore-based paper mill blinded pilot of ship resulting in collision with plaintiff's bridge); Kelly v. Smith,485 F.2d 520 (defendant game preserve keeper shot poacher escaping in motorboat). *Kelly* illustrates a particularly liberal application of maritime jurisdiction to an isolated incident of a pilot shot by a shore-based defendant. The court in *Kelly* reached this result by applying the same four-factor test our Circuit has adopted. In light of the preceding cases, it must be concluded that the fact that a direct cause of the injury to Plaintiff (a longshoreman) may have been shore-based negligence in failure to maintain a backhoe in proper condition does not preclude the extension of admiralty jurisdiction to the accident aboard ship.

The Second Circuit is the only circuit that has specifically addressed the applicability of admiralty jurisdiction to terminal operators. In Leather's Best, Inc. v. S.S. Mormaclynx,451 F.2d 800 (2d Cir. 1971), the court held that an action against a terminal operator for negligent loss of cargo is a

5

1  state claim governed by state law, not cognizable in federal maritime jurisdiction. The plaintiff sued
2  the terminal operator and the ocean carrier after his cargo disappeared from a guarded pier area where
3  the vessel had been unloaded. The court found that the terminal operator, as bailee of the goods on the
4  dock, was not a party to the maritime contract. more significantly, the court held that admiralty tort
5  jurisdiction could not be applied because the tort -- the theft of the cargo -- occurred on land and
6  "admiralty jurisdiction in tort 'is necessarily bounded by locality.'" [Citations omitted]. Id. at 808. The
7  court never reached the question whether the terminal operator was engaged in traditional maritime
8  activity because the case was decided prior to *Executive Jet*, and therefore a strict locality test was
9  applied. However, even if *Leather's Best* had been decided after *Executive Jet*, the result would have
10 been the same, because the Supreme Court's requirements for maritime situs and nexus for admiralty
11 tort jurisdiction are conjunctive. The non-maritime situs of the loss of cargo would have dictated the
12 application of state law. See Colgate Palmolive Co. v. S/S Dart Canada, 724 F.2d 313 (2d Cir. 1983),
13 cert. denied, 466 U.S. 963, 104 S. Ct. 2181, 80 L. Ed. 2d 562 (1984) (following *Leather's Best* in
14 finding action against terminal operator for negligent loss of cargo a state claim). *Leather's Best* is
15 therefore inapposite to the instant case. Here, plaintiffs' injuries occurred aboard a vessel in navigable
16 waters, during the cargo unloading operation, a traditional maritime service. Therefore this case falls
17 within the federal courts' admiralty jurisdiction.

### III.
### CONCLUSION

20  Given the above, it is clear that Plaintiff's injury fall squarely within maritime and admiralty
21 law.

23 Date 3-15-08

25  *James T. Walker* (signature)
    James T. Walker
26  /////   Plaintiff in *pro per*

28  6